Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
1736 Stockton Street, Ground Floor
San Francisco, CA 94133
Telephone: (415) 651-1951
Fax: (415) 500-8300
Email: mark@aoblawyers.com

Attorneys for Plaintiff Heather L. Chicoine

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Heather L. Chicoine, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Pennsylvania Higher Education Assistance Agency; | Violation of the Fair Credit Reporting Act & the California Civil Code |
| Trans Union, LLC; Experian Information Solutions, Inc.; and Equifax Information Services, LLC, | Jury Trial Demanded |
| Defendants. | |

**Preliminary Statement**

1. This is an action for damages brought by plaintiff Heather Chicoine against defendants Pennsylvania Higher Education Assistance Agency ("PHEAA"); Trans Union LLC; Experian Information Solutions, Inc.; and Equifax Information Services, LLC for violation of the Fair Credit Reporting Act ("FCRA") and the Consumer Credit Reporting Agencies Act, Civil Code Section 1785.25(a).

**The Parties**

2. Plaintiff Heather L. Chicoine is a resident of Alameda County, California. Before October 2014, plaintiff's name was Heather L. Josten.

3. Defendant PHEAA is a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Pennsylvania created for improving access to higher education by originating, financing and guaranteeing student loans. PHEAA is also a servicer of student loans and a furnisher of consumer information to the defendant credit reporting agencies ("CRAs"). PHEAA has its principal place of business in Harrisburg, Pennsylvania. PHEAA does business as the American Education Services ("AES").

4. Defendant Trans Union, LLC ("TU") is a limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

5. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

6. Defendant Equifax Information Services, LLC ("Equifax"), is a Georgia limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

### Jurisdiction & Venue

7. The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the state law claims pursuant to 15 USC § 1367.

8. The defendants do business in this district.

### Description of the Case

9. On October 26, 2006, plaintiff Heather Chicoine obtained a student loan from Bank of America in the amount of $9,548. Her mother, Nancy J. Sperry, was a co-signer on the loan.

10. On October 27, 2006, defendant PHEAA gave plaintiff notice it was the loan servicer. PHEAA assigned an account number ending in 8938.

11. On December 7, 2006, National Collegiate Trust sent plaintiff notice it had purchased the loan from Bank of America. PHEAA continued to be the loan servicer.

12. Beginning December 14, 2009, when a payment was first due, and through March 2014, plaintiff made each payment due under the terms of the loan on a timely basis

13. On April 8, 2014, Nancy J. Sperry, plaintiff's mother and co-signer on the loan, filed a Chapter 13 voluntary bankruptcy petition in the District of Arizona, case number 2:14-bk-05069-EPB. Plaintiff was not part of the bankruptcy filing.

14. Ms Sperry's schedule of creditors included defendant PHEAA and the court sent notice of the filing to PHEAA on May 12, 2014. Upon receipt of the notice, PHEAA mistakenly assumed plaintiff had filed the Chapter 13 bankruptcy. This mistake led to PHEAA reporting inaccurate and misleading information to the credit reporting agencies.

15. When a Government-backed student loan goes into default, the financial lender can submit a claim to the guarantor of the loan causing the guarantor to purchase the loan. In this case, National Collegiate Trust, the lender, must have submitted a claim to PHEAA, the guarantor, and on this basis PHEAA purchased the loan from National Collegiate Trust. Once PHEAA purchased the loan, it considered the loan to be delinquent and it assigned the loan to NCO Financial Systems for collection.

16. On April 23, 2014, defendant PHEAA sent plaintiff a statement that the loan was in default. Beginning that month PHEAA refused to accept loan payments.

17. On May 16, 2014, PHEAA informed plaintiff it no longer serviced the account; instead NCO Financial Systems was the servicer.

18. In April and May 2014, PHEAA reported to the CRAs that the loan had been "charged off." PHEAA's reports it had charged off the loan were inaccurate and misleading given

hat plaintiff had made all payments due up to the date her mother filed her Chapter 13 proceeding[1] and because plaintiff was not the person who filed the Chapter 13 bankruptcy.

19.   On June 5, 2014, plaintiff sent PHEAA a letter in which she explained that her mother, who had co-signed the loan, had filed a Chapter 13 petition that caused PHEAA to erroneously consider the loan delinquent even though plaintiff had made all payments due for almost five years and was ready and willing to continue to do so. Plaintiff noted PHEAA had assigned the loan to NCO Financial Systems and that NCO had informed her it would not accept payments on the loan.

20.   From time to time in 2014, plaintiff talked to various PHEAA representatives trying to find out why PHEAA was treating the loan as delinquent when it was not. PHEAA never responded with an explanation except that on one occasion, a PHEAA admitted that it had mistakenly characterized the loan as included in bankruptcy.

21.   On or about November 20, 2014, PHEAA assigned the loan to Transworld Systems, Inc., a collection agency ("TSI"). Beginning in that month, TSI accepted plaintiff's loan payments. Plaintiff paid TSI the payments that had been due for April through November 2014 and plaintiff has continued to make payments when due.

22.   On March 31, 2015, plaintiff sent dispute letters to PHEAA, Experian, Equifax, and Trans Union in which she asked that the negative information in her credit reports concerning the student loan ending in 8938 be deleted. She stated the loan servicer had erroneously claimed she had filed bankruptcy even though she was current on the account.

23.   On April 28, 2015, Experian sent plaintiff the results of its investigation. Experian refused to delete the account and refused to delete PHEEA's report that the loan was charged off in

---

[1] A FTC Staff Summary of the FCRA states that "[i] is not a reasonable procedure to label an account that has been discharged in bankruptcy as 'charged off as bad debt' if the account was open and not charged off when the consumer filed bankruptcy. Such a designation would be inaccurate or misleading, as it would indicate that the creditor had written off the account at the time of bankruptcy when it had not in fact done so." Staff Summary, § 607(b)(6).

*Chicoine v PHEAA et al*, ND Case No.
Complaint and Jury Demand                                                                                                          4

April and May 2014. Experian continued to report that the account was "transferred to recovery" when there was no reason it would have been transferred to recovery given plaintiff was always willing and able to make the payments but could not do so because of PHEAA's erroneous belief plaintiff was in bankruptcy. Experian also inaccurately reported that the status of the account was "Paid, Closed, $7,736 written off." Experian's reporting on the account were inaccurate and misleading.

24. On May 6, 2015, Trans Union sent plaintiff the results of its investigation. It refused to delete the account and it inaccurately reported that the account was "paid in full," that it "was a charge off," and that last payment had been made on May 1, 2014, all of which was inaccurate and misleading.

25. On May 5, 2015, Equifax sent plaintiff the results of its investigation. Equifax said that the creditor verified that it was reporting the account correctly. Hence, Equifax continued to report the account was a charge-off, that it had been transferred to recovery, that the account was delinquent as of April 2014, all of which was inaccurate and misleading.

26. On January 31, 2017, plaintiff sent a second set of dispute letters to each of the defendants. Plaintiff asked each defendant to remove the negative information on her account. Plaintiff stated the history of the account, that PHEAA had assumed she had filed bankruptcy when she had not done so, that she was not allowed to make payments on the loan from May 2014 until November 2014, and that she had made all payments due under the loan.

27. On February 7, 2017, Experian sent plaintiff the results of its investigation. Experian refused to delete the report that the loan had been charged off in April 2014. Experian changed the May 2014 to reflect the account was closed at that time, which was not accurate. Experian also continued to report that $7,750 had been written off which was inaccurate and misleading.

28. On February 7, 2017, Trans Union sent plaintiff the results of its investigation. Trans

Union refused to delete the account. Trans Union continued to report the account was "charged off" and that the loan was closed on May 1, 2014, all of which was inaccurate and misleading.

29. Defendants' conduct has caused plaintiff to suffer actual damages in the form of (a) lost credit opportunities, b) harm to credit reputation and credit score, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to plaintiff's great detriment and loss.

30. Defendant PHEAA is a subscriber to the CRAs. As such, at least once a month, PHEAA electronically transmits its customers' account information to CRAs. Each such transmission includes changes, additions and deletions of customers' account information.

31. Plaintiff's account status was included in each of PHEAA's monthly transmissions of information to the CRAs.

32. When PHEAA transmitted the loan account information, it knew that the CRAs would sell the credit information to anyone who had a permissible purpose to obtain the credit information and who was willing to pay the CRAs fees. Such persons include banks, finance companies and others that are in the business of loaning money to consumers.

33. Potential credit grantors that were considering extending credit to plaintiff sought and obtained plaintiff's credit reports from one or more of the CRAs. In December 2016, plaintiff's efforts to obtain a mortgage were impaired by the presence of the charge off the loan on her credit reports.

34. Each time a CRA sold a copy of plaintiff's credit reports to a potential credit grantor, plaintiff was damaged. Each such sale was a separate publication of PHEAA's misleading reports.

35. Credit scores are used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of the consumer's credit reports published by the CRAs. Plaintiff's credit scores were adversely affected by defendants 'inaccurate credit reporting.

**First Claim: Violations of the Fair Credit Reporting Act—Against Trans Union LLC, Experian and Equifax**

36. Plaintiff incorporates by reference ¶¶ 1 through 35.

37. The Fair Credit Reporting Act provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consume notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 USC § 1681i(a)(1) (A).

38. In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

39. Within the two years preceding the filing of this complaint, plaintiff notified the defendant CRAs of inaccuracies contained in its reports and asked them to correct the inaccuracies.

40. The defendant CRAs failed to conduct a reasonable reinvestigation of the inaccuracies that plaintiff disputed.

41. The defendant CRAs failed to review and consider all relevant information submitted by plaintiff.

42. The defendant CRAs violated 15 USC § 1681c(f) by failing to report that plaintiff disputed the accuracy of the account in question.

43. The defendant CRAs failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiff's s credit reports, information and files in violation of 15 USC § 1681e(b).

44. The defendant CRAs failed to maintain reasonable procedures designed to prevent the reappearance of information that has been deleted in violation of § 1881i(a)(5)(C).

*Chicoine v PHEAA et al*, ND Case No.
Complaint and Jury Demand                                                                                                    7

45. Because of the above-described violations of § 1681i and § 1681e(b), plaintiff sustained damages.

46. Defendants' violations of the FCRA were willful and therefore plaintiff is therefore entitled to also seek statutory and punitive damages.

**Second Claim: Violations of the Fair Credit Reporting Act—Against PHEAA**

47. Plaintiff incorporates by reference ¶¶ 1-46.

48. The FCRA requires a furnisher such as PHEAA, after receiving notice from a CRA that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the CRA.

49. Within the last two years, PHEAA provided misleading, inaccurate and misleading information to the CRAs.

50. PHEAA violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a) willfully and negligently failed to investigate and misleading and inaccurate information plaintiff disputed;

(b) willfully and negligently failed to review all relevant information concerning plaintiff's account;

(c) willfully and negligently failing to report the results of investigations to the CRAs;

(d) willfully and negligently failing to report the misleading, incomplete, and inaccurate status of the inaccurate information to the CRAs;

(e) willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the CRAs concerning the inaccurate, misleading and incomplete information disputed by plaintiff;

(f) willfully and negligently failing to provide the CRAs with the information and evidence plaintiff submitted to PHEAA that proved that the information concerning plaintiff's credit reports was inaccurate;

(g) willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning plaintiff's account to the CRAs; and

51. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b).

52. PHEAA violated 15 USC § 1681s-2(a)(3) and 15 USC § 1681s-(b) by failing to mark the account as disputed and failing to inform the CRAs the account was disputed.

53. Because of the above-described violations of § 1681s-2(b), plaintiff has been damaged.

**Third Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against PHEAA**

54. Plaintiff incorporates by reference ¶¶ 1-53.

55. California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

56. PHEAA negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate, misleading, and incomplete.

57. PHEAA failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

58. Based on these violations of Civil Code § 1785.25 (a), plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

**PRAYER**

WHEREFORE, plaintiff prays for judgment as follows:

1. Actual, statutory and punitive damages;
2. Injunctive relief;
3. Costs and attorney's fees; and
4. Such other relief as the Court may deem proper.

Dated: February 23, 2017.

ANDERSON, OGILVIE & BREWER LLP

By /s/ Mark F. Anderson
Mark F. Anderson
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

Dated:  February 23, 2017.

ANDERSON, OGILVIE & BREWER LLP

By /s/ Mark F. Anderson

*Chicoine v PHEAA et al*, ND Case No.
Complaint and Jury Demand                                                                                                                10